UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:05-CR-148 |
| | ) | (PHILLIPS/GUYTON) |
| JERMAINE HUGHES and | ) | |
| VICENTE CORONA, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. The defendant Vicente Corona ("Corona") has filed a motion titled Motion For Date Of Production To The Court Of Subpoenaed Items For Examination By Counsel Pursuant To Fed. R. Crim. P. 17(c) [Doc. 206], a Supplement to the Motion [Doc. 226], a Second Supplement [Doc. 243], filed on February 6, 2007, and a Third Supplement [Doc. 258], filed on March 14, 2007. The government has filed a Response in opposition [Doc. 228] and Corona has filed a Reply thereto [Doc. 229]. The Court conducted a hearing on March 6, 2007 attended by counsel for the government, counsel for Corona, and the defendant Corona.

In his motion [Doc. 206], the defendant Corona asks the Court to set a "date certain for pre-trial production of items that defendant Corona intends to subpoena so that the items may be provided to and examined by counsel for the parties a sufficient amount of time prior to trial." Specifically, Corona wants recordings and other records of conversations made involving inmates

1

at the Knox County and Blount County Detention Centers. Corona argues that these items "could be inconsistent with trial testimony offered by the prosecution or could be otherwise exculpatory."

The government, objecting to Corona's Motion, argues that the movant is not entitled, under Rule 17(c)(1) of the Federal Rules of Criminal Procedure, to have designated items produced by a witness in court prior to trial. The government relies on United States v. Nixon, 418 U.S. 683, 698-700 (1974), in which the Court held that in order to require production prior to trial, the moving party must show, inter alia, that the items subpoenaed are evidentiary and relevant and are requested with specificity and not part of a broad discovery strategy. The Nixon Court, moreover, plainly stated that the "need for evidence to impeach witnesses is insufficient to require its production in advance of trial." Id. at 701.

Finally, in its response the government moves to quash the subpoenas [Docs. 220, 221, 252, and 253] served on the Knox and Blount County Detention Centers.

In reply, Corona relies on the Order of Magistrate Judge Inman in United States v. Gunter, 2:06-CR-05,[1] a case where the defendant issued subpoenas to 10 law enforcement agencies to produce documents regarding several potential witnesses in the case. In that Order, Judge Inman balanced the legitimate need of the defendant for impeachment material against the well-settled law that Rule 17(c) subpoenas must not be used as a discovery device. Judge Inman then noted that District Judge Greer had voluntarily agreed to review, in camera, the subpoenaed materials five (5) days before trial. Judge Greer then would determine what information in those documents, if any, should be disclosed to the defendant for his use at trial. Judge Inman's ruling, therefore, was predicated on Judge Greer's personal preference in that specific case for the handling of materials

---

[1]Magistrate Judge Inman's opinion is found at [Doc. 156] of 2:06-CR-05.

subpoenaed pursuant to Rule 17.

In the present case, Corona caused to be issued subpoenas [Docs. 220 and 221] to the Knox and Blount County Detention Centers, requesting all recordings of telephone calls of six "current or former inmates"[2], and also requesting:

> "any and all associated reports of telephone calls or telephone logs pertaining to the "pin", other identification numbers, or other system of associating the above inmates for purposes of their making and/or receiving telephone calls while at your facility, or reports or logs of telephone calls otherwise affiliated with the above inmates."

The subpoenas specify no time frame relative to the items requested. The defendant Corona seeks the recordings for all time periods when the subject inmates were incarcerated. The subpoenas were served on December 6, 2006, and directed that the items be produced at the undersigned's courtroom on December 18, 2006, the date set for hearing pretrial motions. After filing his motion, apparently Corona anticipated, for a time, that he would receive the items on December 18, 2006 and that his motion would be moot. [Doc. 226]. However, on December 18, 2006, the court, due to substitute counsel entering the case for defendant Hughes, re-scheduled the hearing for pretrial motions from December 18, 2006 to March 6, 2007. [Doc. 232]. The Court later re-scheduled the hearing on pretrial motions to April 2, 2007. [Doc. 244]. Although representatives of the Knox and Blount County Detention Centers apparently were at Court on December 18, 2006, along with the subpoenaed items, prepared to comply with the subpoenas, they did not deliver the items to counsel for Corona. Corona now [Doc. 243] is asking for the Court to order that the

---

[2]David Esserman, Charles Christopher Foster, Dennis Richardson, Richard Robinson, Kimberly Robinson, and Jimmy Scott Simpson are the subject inmates.

subpoenaed items be produced to him prior to the April 2, 2007 hearing on pending motions.

> Rule 17(c)(1) states:
>
>> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The Court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1).

Corona argues [Doc. 243] that the Blount and Knox County Detention Centers routinely provide audio recordings of inmate's phone conversations to the government. Corona further alleges that the investigating agents of the government, in the present case, have already been provided with the recordings, or copies thereof, of the phone calls in which Corona is a party to the conversation. Corona alleges that these recording have not been provided to his counsel, despite his request for them pursuant to Rule 16(a)(1)(B)(i), and the government's indication that it would consider producing them.

Corona wants the recordings of the phone calls of the other six inmates, and of himself, to see if they contain impeachment evidence of potential government witnesses or exculpatory evidence for the benefit of Corona. Regarding the possible impeachment of potential government witnesses, "Ordinarily, a defendant is not entitled to a list of the names and addresses of the government's witnesses." United States v. Perkins, 994 F.2d 1184, 1190 (6th Cir.), cert. denied, 510 U.S. 903 (1993). A defendant, however, is entitled to receive evidence in the government's possession which tends to impeach or discredit the government's witnesses. Giglio v. United States, 405 U.S. 150 (1972). Classic examples of such evidence are plea agreements and

prior criminal records, if known to the government.  Id. at 154-55.  The law is well-settled, however, that there can be no advance production of prior inconsistent statements of a witness, since they do not become evidentiary until the witness has testified.  United States v. Fields, 663 F.2d 880 (9th Cir. 1981); United States v. Cuthbertson, 630 F.2d 139 (3rd Cir. 1980), cert. denied, 49 U.S. 1126; United States v. Louis Trauth Dairy, Inc., 162 F.R.D. 297 (D.C. Ohio 1995).

Regarding exculpatory evidence, the government has an absolute duty to disclose material and relevant evidence favorable to the accused.  Brady v. Maryland, 373 U.S. 83, 87 (1963). Moreover, it is a violation of the government's obligation under Brady to not disclose a witness' inconsistent statements.  United States v. Minsky, 963 F.2d 870, 875 (6th Cir. 1992).

On the other hand, Brady requests can not be a pretext for broader discovery, and any alleged Brady materials must be requested with sufficient specificity such that the materials can be identified.  United States v. Driscoll, 970 F.2d 1472, 1482 (6th Cir. 1992), cert. denied, 506 U.S. 1083 (1993).  Mere speculation that requested items may contain Brady material is not sufficient to require disclosure.  Id.  In addition, "the government typically is the sole judge of what evidence in its possession is subject to disclosure."  United States v. Presser, 844 F.2d 1275, 1282 (6th Cir. 1988).

In the context of the foregoing, well-established law, Rule 17(c) is not intended to be a discovery device.  United States v. Noriega, 764 F.Supp. 1480, 1492 (S.D. FLA 1991).  A person who receives a Rule 17(c) subpoena must appear at the time and place specified, and must have the items requested, but the person is not required to surrender possession of them - only to have them for possible use as evidence.  The Court, however, under the third sentence of Rule 17(c), has the discretion to allow either side to inspect subpoenaed documents or items prior to the trial under the supervision of the court.  The purpose of this is not to grant discovery but to provide a

mechanism whereby the trial is expedited by providing a time and place before trial for the inspection of subpoenaed materials which will be evidence in the case. Nixon, 418 U.S. at 698-699. Moreover, while material usable for impeachment is within Rule 17(c), it does not become evidence until the witness has testified at trial. Therefore, prior inconsistent statements of a witness are not subject to production and inspection prior to trial, regardless of a Rule 17(c) subpoena.

In any event, the burden is on the party seeking production to show good cause for production before trial. The Nixon Court stated that lower courts should generally require the following showing to have production before trial:

> (1) That the documents are evidentiary and relevant; (2) That they are not otherwise procurable by the defendant reasonably in advance of trial by exercise of due diligence; (3) That the defendant cannot properly prepare for trial without such production and inspection in advance of trial and the failure to obtain such inspection may tend unreasonably to delay the trial; (4) That the application is made in good faith and is not intended as a general fishing expedition.

Nixon, 418 U.S. at 699.

During the hearing on March 6, 2007, the defendant reported that officers from the Knox County and the Blount County Detention Centers were present in court, and that they had in their possession recordings responsive to the subpoenas in issue. The defendant reported that the detention centers do not produce inmate's recorded telephone conversations as public records, and therefore, the defendant could not procure the recordings without a court order. Officer Dan Neubert, Jr., from the Blount County Detention Center, and Officer Travis Graham, from the Knox County Detention Center, testified at the hearing and confirmed that the recordings of inmates'

telephone calls are not public records, and that they have not been provided to the defendant.[3] Therefore, the second prong of the <u>Nixon</u> test is easily established: the recordings of inmates' telephone calls "are not otherwise procurable by the defendant reasonably in advance of trial by exercise of due diligence."

The testimony at the hearing also established that the phone calls responsive to the subpoenas in issue cover many hours of recordings; for example, regarding the calls of inmate Dennis Richardson, in excess of ten hours of recordings. Moreover, the recordings would need to be updated, adding even more time, since the recordings, which are digital, have not been reduced to disc form since the December 16, 2006 court hearing. Accordingly, the Court finds that the third prong of the <u>Nixon</u> test has been met: if the lengthy recordings are to be produced and heard by defendant, they should be produced sufficiently before trial so as to not unreasonably delay the trial.

The first prong of the <u>Nixon</u> test requires that the recordings sought are "evidentiary and relevant." The fourth prong of the <u>Nixon</u> test requires that the defendant's request is in good faith and not a general "fishing expedition." Under the circumstances of the present case, these two prongs should be analyzed together.

The factual basis which provides the starting point for the analysis is not in dispute.

---

[3]The Tennessee Public Records Act, ("the Act") Tennessee Code Ann. § 10-7-503 et seq. does not include a comprehensive list of the specific records which must be made available to members of the public. Certain sections of the Act, however, do require disclosure of defined items for example, records of criminal convictions shall be made available to "any citizen, upon request." T.C.A. § 10-7-507. In addition, inmates' records generally "shall be open for public inspection" and are therefore public records under the Act. <u>State v. Wingard</u>, 891 S.W. 2d 628, 635 (Tenn. Crim. App. 1994). However, the general rule is that documents in an active criminal case which would not be subject to discovery and inspection under Rule 16 of the Rules of Criminal Procedure, are not subject to public inspection under the Act. <u>Knoxville News-Sentinel v. Huskey</u>, 982 S.W. 2d 359, 361 (Tenn. Crim. App. 1998); <u>Arnold v. City of Chattanooga</u>, 19 S.W. 3d 779, 785 (1999 Tenn. App.).

Richard Robinson was indicted on drug trafficking charges. Thereafter, he cooperated with the government and agreed to a guilty plea. Kimberly Robinson is the wife of Richard Robinson. She was indicted, and thereafter she agreed to cooperate with the government. She agreed to wear a "wire" while engaging in a drug trafficking transaction with Corona, wherein Corona agreed to sell drugs to Kimberly Robinson. The statements made by Corona and Kimberly Robinson during that transaction were recorded. Following that meeting, but while still being recorded, Kimberly Robinson had a telephone conversation with Richard Robinson, who was then incarcerated in the Knox County Detention Center. The government has provided the defendant with this recording, which, of course, does not reveal Richard Robinson's side of the conversation with Kimberly Robinson. The defendant wants the Knox County Detention Center's recording of Richard Robinson's side of the call.

The defendant argues that Kimberly Robinson's side of the call reflects that she "set up" Corona for the government. The government counters that there is nothing exculpatory in Kimberly Robinson's tape, and further that if there were, the defendant would have presented it to the Court in support of the present motion.

In addition, the defendant argues that he needs the phone calls of the other inmates. According to defendant, his investigation indicates that these inmates are potential government witnesses who are "enhancing" or "exaggerating" Corona's involvement in the trafficking conspiracy. Furthermore, he argues, they have coordinated this effort using telephone calls from the Knox County and Blount County Detention Centers.

The government argues, correctly, that the defendant can not obtain impeachment evidence before trial, and that Rule 17(c) can not be used for that purpose.

8

In Noriega, supra, the court faced the issue of whether to order enforcement of a government subpoena for production of the recorded jail telephone calls made by the former dictator of Panama, Manuel Noriega. The court emphasized that enforcement of a Rule 17(c) subpoena "depends on whether the subpoena reflects a genuine effort to obtain identifiable and relevant evidence or instead constitutes a broad 'fishing expedition' which seeks to use Rule 17(c) as a means for obtaining additional discovery." 764 F. Supp. at 1493.

In the present case, the defendant, like the government in Noriega, can not reasonably specify the information contained, or believed to be contained, in the recordings sought. The defendant has a theory as to what might be in the recordings, but at this point the theory does not go beyond speculation. As the Noriega Court concluded, a jail phone call recording policy premised on legitimate security needs should not be transformed into open-ended discovery. Id.

On the question of whether the government has standing to move to quash subpoenas served on third parties, the Court must find that the government does have standing. In Noriega, the Court found that the defendant had standing to move to quash the government's subpoena to the Metropolitan Correctional Center in Miami, seeking recordings of the defendant's jail telephone calls. The Noriega Court stated:

> The government's argument that Noriega lacks standing to challenge a subpoena served on a third party is off point. The Court need not look to any litigant in order to quash a subpoena which seeks to usurp the Court's exclusive authority to permit production of materials prior to trial.

Id. at 1493, n.13.

9

In short, the first and fourth prongs of the Nixon test can not be met by the defendant. Based upon the defendant's inability to specify the information to be obtained in the requested recordings of phone calls, the applicable legal authority, and the entire record in this case, the Court finds that the defendant's request for the Court to approve the Rule 17(c) subpoena in issue is not well-taken. However, if the government is in possession of any such recordings of phone calls of the defendant Corona, they shall be produced to the defendant pursuant to Rule 16 as prior recorded statements of the defendant.

Wherefore, the Motion For Date of Production To The Court Of Subpoenaed Items For Examination By Counsel Pursuant To Fed. R. Crim. P. 17(c) [Doc. 206] is **DENIED**, and the government's Motion to Quash [Doc. 228] is **GRANTED**.

**IT IS SO ORDERED.**

ENTER:

　　　　s/ H. Bruce Guyton
United States Magistrate Judge